MAY E. PRESCOTT, petitioner, .

*v.*

EDWARD R. PRESCOTT, defendant.

[Decided October 29th, 1923.]

1. A party to a suit while necessarily going to, staying at, or returning from a court is equally privileged from the service of a summons or of a *capias* in a civil action. This rule also applies to the writ of *ne exeat*.

2. Where a defendant under bail in a criminal cause, returned to this state from another to stand trial, and, upon the trial being postponed, was arrested under a writ of *ne exeat* while eating his luncheon at a restaurant across the street from the court house, he should be discharged from custody under that writ.

On writ of *ne exeat.*

Stenographic report of the oral opinion given in the above-stated cause, at the chancery chambers in Jersey City, on Monday, October 29th, 1923, at ten o'clock in the forenoon, by his honor John Bentley, vice-chancellor.

*Messrs. Simpson, Gordon & Sewell (Mr. William E. Sewell),* for the petitioner.

*Mr. Edward M. Salley,* for the defendant.

BENTLEY, V. C. (orally).

On October 24th, 1923, the defendant presented himself at the court house in Hudson county to stand trial on an indictment charging him with desertion of his wife and child. A postponement of such trial was ordered, and after having left the court house and while in a restaurant across the street therefrom, with his counsel, eating lunch, he was taken into

custody by a constable from the sheriff's office under a writ of *ne exeat* previously allowed by me. I feel that it is only fair to the petitioner's counsel to say that he was entirely frank with me at the time he secured the order for the writ. He then explained that it was likely no service could be made until and unless the defendant should appear on the trial of his indictment. Not being entirely sure of the law myself, and at the time having no opportunity to inform myself, I indicated to counsel that he should make the service in such way as he might be able to and that if any objection was made thereafter I would deal with it when presented to me.

I felt that every proper opportunity ought to be extended to the wife to compel this man to contribute to her support and that of their child. There was enough against him to warrant an indictment, from which he had fled, and a petition for divorce that he did not care to come into court and defend. As between his discomfort and the distress into which he had plunged his wife I felt that all doubts pending an argument of the question might properly be resolved in her favor.

Promptly after the defendant's arrest his counsel applied to set the same aside upon the ground that the defendant had voluntarily come within the jurisdiction to stand his trial.

Originally, and before he pleaded, the defendant was arrested in the city of New York on a warrant or indictment issued or returned in this state. While in custody in New York under that process he waived extradition and returned in custody to New Jersey where he was arraigned and pleaded not guilty. Had service of the writ been made upon him when brought here under these circumstances a very different case would be presented. Thereupon, he was placed in custody of the probation officer by the judge of the quarter sessions and ordered to pay $8 per week to his wife and was permitted to go at large, whereupon he returned to the State of New York. There he has remained until the 24th of October mentioned, when he voluntarily came back into this jurisdiction and was placed in custody, as at first mentioned.

It is said that his last return on the date just mentioned

cannot fairly be called "voluntary," inasmuch as it was upon the order or direction of the probation officer for his trial. That, however, is not the meaning of the word "voluntary," as used in this connection. To be a voluntary return it is not necessary that it should be something to excite pleasure in the breast of the defendant, or to which he would look forward eagerly; it means, on the other hand, the doing of something which he at the time is free to do or not to do, as he so decides. It is synonymous with "intentional" or "voluntary," and contemplates the doing of an act by one's own will and not compelled by *vis major*. That this is so will further appear from the quotation which I shall read presently.

The rule in this state is laid down in an opinion by Mr. Justice Parker in the case of *Michaelson* v. *Goldfarb, 94 N. J. Law 352*. That rule, in substance, is that "a party to a suit while necessarily going to, staying at, or returning from a court is equally privileged from the service of a summons or of a *capias* in a civil action." In the *Michaelson Case* the defendant was also the defendant in a criminal case in the Monmouth county oyer and terminer, so that the rule is equally applicable whether the party has been attending a civil or a criminal trial or other proceeding.

In the case just mentioned, the court distinguished *Rutledge* v. *Krauss, 73 N. J. Law 397*, because there the defendant had returned into this state not voluntarily but in custody under an extradition warrant, and it was there held that he had no privilege because he was a fugitive from justice and was returned *in invitum*.

Counsel for the petitioner maintains that under this very distinction the defendant, in the case at bar, should not be released from confinement until he gives bail; but I think that can best be answered by quoting from the *Michaelson Case* (at *p. 353*): "It is argued that defendant was legally in custody of the law while under bail, and therefore subject to service of outside process; and the New York case of *Netograph Co.* v. *Scrugham, 197 N. Y. 377; 90 N. E. Rep. 962,* is certainly in point and supports this proposition. But

we are unwilling to give our assent to it. The New York court, while apparently unanimous, conceded that 'the question was not free from difficulty;' and from the standpoint of our decisions the difficulty is insuperable. Theoretically, it is true, the defendant under bail is 'in the friendly custody of his sureties.' *6 C. J. 1042.* They can, of course, arrest and surrender him at their option. Theoretically, in another sense, he is in the custody of the law. But the question of exemption of witnesses and litigants from extraneous process is pre-eminently a practical one, whose end is to encourage such witnesses and litigants to attend our courts with confidence. For all practical purposes a defendant under bail is as free as any other man so long as he keeps to the terms of his bond and retains the confidence of his sureties. If he is 'in the custody of the law,' so, also, we suppose, is a defendant who has given cash bail or has been discharged on his own recognizance. In all three cases the bail is, in a practical sense, merely a security for his appearance. The distinction between this case and *Rutledge* v. *Krauss* becomes striking if we assume that this defendant had violated his bail bond, had fled, and had been recaptured and brought here. And it can readily be seen that defendant under bail would be tempted to evade our courts if they are aware that by voluntarily coming here to face an indictment they are rendering themselves liable to summons or *capias* in a civil action. We might add that similar reasoning might well induce witnesses under bail in criminal cases to take similar action."

The last objection made to the release of this prisoner is, that in the *Michaelson Case* the court was only dealing with the service of summons and *capias* and that therefore it should not extend to process of *ne exeat*. In so arguing, counsel loses sight of the reason for the rule and the breadth of its sweep. No further argument is required for us to see that the purpose of the rule is to encourage parties and witnesses to come voluntarily within a jurisdiction where they could not be compelled so to do, in the advancement of the administration of justice. It is, as Mr. Justice Parker

says, a practical rule intended to secure the greatest good in the largest number of cases, and it cannot be denied that fear of arrest under a writ of *ne exeat* would be quite as deterring to a party outside of the jurisdiction as the service of a summons or *capias* upon him.

Of course, I am not concerned with the entirely different question of the service of process upon a party resident in this state while going to, remaining at or returning from a court.

I will advise an order releasing the defendant from custody.