JOHN G. MOORE et al., Appellants, v. FARMERS MUTUAL FIRE AND LIGHTNING INSURANCE ASSOCIATION, Appellee.

No. 43281.

MARCH 17, 1936.

REHEARING DENIED JULY 31, 1936.

H. Haehlen and Arthur Jacobson, for appellants.

A. E. Sheridan, for appellee.

MITCHELL, J.—John G. Moore was the owner of a certain farm located in Allamakee county, Iowa, on which he had caused to be erected, among other buildings, a dwelling house. The First Joint Stock Land Bank of Chicago held a mortgage in the amount of $11,000, which was a first lien against the farm upon which the house was located.

The Farmers Mutual Fire & Lightning Insurance Association of Winneshiek County was a mutual company, organized by the farmers of that community under chapter 1, title 9, of the laws of the state of Iowa. When a loss occurred an assessment was levied to pay same. It had written a policy of insurance in the amount of $5,000 upon the Moore house. On the 10th day of December, 1933, the dwelling house covered by the policy was completely destroyed by fire, and on the 7th day of July, 1934, Moore and the First Trust Joint Stock Land Bank of Chicago commenced this action in equity, praying for judgment in the amount of $5,000, with interest and costs, and also asked that the court compel the defendant company to make such assessment among the members of the association as would be necessary to pay the loss. The defendant filed answer, alleging: (1) Failure to give formal notice or proof of loss; (2) that the plaintiff Moore, in making written application for insurance policy, stated that the only incumbrance was to the First Trust Joint Stock Land Bank of Chicago, and no one else, and that the property was in fact incumbered to others far in excess of the mortgage to the First Trust Joint Stock Land Bank; (3) that there was a misjoinder of parties; (4) that the

statements as to the incumbrance on said property were material representations, were warranties and greatly affected the risk, and said policy was rendered null and void and nonenforceable; (5) that said fraudulent representations were made for the purpose of inducing the issuance of the policy, and that, had defendant known the truth with reference thereto the policy would not have been issued. That at the time Moore made the written application for insurance on the house, he represented to the insurance company that the cash value of the house was $6,500, whereas in truth and in fact it did not exceed the sum of $4,000; that said representation was made for the purpose of obtaining insurance in the amount of $5,000, is false and untrue, and was known to be untrue at the time Moore signed the application. That said representation was material to the risk in question, and said policy would not have been issued for $5,000 had the truth been known.

To this answer plaintiff filed a reply, alleging:

(1) That defendants, after oral notice of said loss, sent their adjusters to the scene of the loss, and waived any and all requirements of formal notice and proof of loss.

(2) That the defendants had full knowledge of any and all incumbrance placed against said premises prior to loss complained of.

(3) That included in said policy covering the dwelling house there was also included personal property owned by plaintiff Moore. That the defendants after said loss paid to plaintiff the amount for the loss of the personal property covered by the same policy covering the dwelling house, and the defendants were estopped from questioning the sufficiency of notice or proof of loss, and were estopped from denying the validity of policy by reason thereof.

(4) That defendant's adjusters and appraisers immediately after the fire advised plaintiff that it would make adjustment and settlement of loss claimed. Plaintiff relied thereon. That the defendants waived any and all requirements of the giving of formal notice or proof of loss.

Evidence was offered, and after the filing of written briefs the lower court entered judgment, dismissing the plaintiffs' petition, and for costs. From this decree, plaintiffs, being dissatisfied, have appealed to this court.

Appellant Moore was the owner of the house in question.

Appellant First Trust Joint Stock Land Bank of Chicago, Ill., held a mortgage on the real estate in excess of $11,000, and, according to the terms of said mortgage and application for loan, any loss occurring under the policy was payable to the Land Bank in the event that the mortgage was not previously paid. That the mortgage had not been previously paid is conceded.

Appellee is a Farmers Mutual Insurance Association, consisting of property owners in the community who have banded together under the laws of this state, with the thought in mind that they could reduce the cost of carrying their insurance, rather than for the purpose of the company making money.

Several defenses are raised by the appellee. We find it necessary to discuss only one of them.

I. The insurance company pleads as one of the reasons why it is not liable on this policy the fact that there was an additional incumbrance upon the property which was not disclosed by Moore. We are confronted with a record which is not in dispute. Before the insurance company issued the policy, a written application was prepared and signed by Moore, in which he was asked about the incumbrance. He said there was an $11,000 mortgage against the property, but at that very time, known to Moore and unknown to the company, there was an additional $2,000 incumbrance owing to his brother, which was unrecorded. This was a material representation. The written application, in which Moore answered the questions asked him, and which he signed, contained the following: "I hereby agree that the foregoing is a full, just and true exposition of all facts, circumstances, conditions, and value of the property insured so far as same is known to me or material to the risk. I further agree not to place other insurance or incumbrance on the property without notice to the Secretary and agree to be governed by the articles of incorporation and by-laws now in force and pay all assessments made in accordance with rules."

The company was entitled to know the amount of the incumbrance against this property. In order to ascertain that, it asked Moore and he replied, "an $11,000 mortgage," whereas, in reality, at that time there was an additional $2,000 mortgage, which was unrecorded and of which the company had no notice until after this suit was brought. Moore had agreed with the insurance company that the answers which he gave to the ques-

tions, to secure the policy of insurance, were a "full, just and true exposition of all the facts, circumstances and conditions." This of course was not true, because there was an additional $2,000 mortgage which was a lien against this property and of which he gave the insurance company no notice, and, as it was unrecorded, there was no way that the company could possibly have known about it.

But the appellant argues there is a distinction between having the mortgage on the property and not informing the company, and placing one on the property after the policy of insurance is issued. We fail to see the distinction. As far as the insurance company is concerned, at the time the policy was issued it believed (and it had a right to do so because Moore had informed them that the only incumbrance against the property was $11,000) that that was the only incumbrance; it had no knowledge that there was an additional $2,000 mortgage. It was just as important to the company to know the exact amount of incumbrance against the property at the time the policy was issued as to have a mortgage placed on the property after the policy was issued. What the company desired to know, and what it was entitled to know, was what the amount of the incumbrance was against the property at the time the policy was written. And, in order to ascertain this, the company asked the questions of Moore, who knew the facts.

In the case of Hart v. Home Mutual Ins. Ass'n, 208 Iowa 1030, at page 1032, 226 N. W. 781, 782, this court said:

"It is undisputed that the mortgage at the time the policy was issued was for $10,000, and that after it was issued the $10,000 mortgage was replaced by one for $12,000. The policy declares that, unless otherwise provided, it shall be void if the subject of insurance be or become incumbered by lien, mortgage, or otherwise created by voluntary act of the insured or within his control. Plaintiff argues that the new mortgage did not increase the incumbrance, because, as he asserts in argument, the new mortgage included past-due interest and taxes which brought the original incumbrance up to $12,000. The evidence, however, does not bear out this contention. Plaintiff testified that the mortgage for $12,000 was a renewal of the $10,000 mortgage; that at the time he filled out the application he 'forgot that mortgage had to be made larger to take up the interest that

had accumulated for a couple of years on that mortgage. I knew it was $10,000. I knew that I had given a renewal on it and I just put it down $10,000 without thinking about the interest that had to be included in making the mortgage larger.' He also testified that he could not 'remember the interest accumulation. Probably in the neighborhood of $1,000.' He says nothing about taxes. Prima facie the execution of the $12,000 mortgage was a violation of the condition of the policy and invalidated it. Lee v. Agricultural Ins. Co., 79 Iowa 379, 44 N. W. 683; 26 C. J., 246; State Cent. Sav. Bank v. St. Paul F. & M. Ins. Co., 184 Iowa 290, 299, 168 N. W. 201; Code 1927, sections 8981, 9018.

"Thus it became incumbent on plaintiff to show that the new incumbrance was not, as it purported to be, for an increased amount, and therefore not an increase of hazard. Even if full effect be given to plaintiff's testimony, the existing incumbrance amounted to only $11,000, while the new one was for $12,000.''

In the Hart case, above cited, this court held that the increase of $1,000 violated the terms of the contract. It therefore follows in this case that where there was an additional $2,000 mortgage, unrecorded and unknown to the insurance company, but known to the insured, this was a violation of the terms of the policy which would prevent him from recovering. It was material for the insurer to know of the incumbrance in reference to the responsibility of the insured and his ability to meet his obligations to the company. The insurance company was interested in knowing who had any claims against this property, and to whom the loss would be payable in case of one. And, in addition to this, it was all-important that it should know of the interest that Moore had in the premises, and his interest in the premises depended upon the amount of incumbrance which he had against same.

II. Appellee also raised as one of the defenses the fact that there was a material misrepresentation in regard to the value of the house. Moore in his written application placed the value of the house at $6,500. Evidence most favorable to the appellant Moore shows the house was worth only a little over $5,000. There was a clause in the policy and in the by-laws of the company which prohibited it from issuing insurance on a building in excess of two-thirds of the value of the property.

We do not find it necessary, due to the facts set out in this opinion, to pass upon this question. We are confronted here with a contract of insurance.

In the case of Kantor v. New York Life Ins. Co., reported in 219 Iowa 1005, at page 1007, 258 N. W. 759, 760, Justice Powers, speaking for this court, said:

"An insurance policy is a contract between the insurer and the insured, and must be interpreted like other contracts. The object of all efforts at interpretation is to arrive, if possible, at the intention of the parties. To that end certain rules have come to be recognized as an aid to the court. The court will look to the whole instrument in an effort to determine its meaning; it will consider the purposes sought to be attained by the contract as shown by the instrument; and, if words be ambiguous, they will be construed against the party who prepared the document. It is frequently said that insurance policies will be liberally construed in favor of the insured. This is probably only another way of saying that the objects and purposes of the contract will be kept in mind and ambiguous language will be construed against the insurer who prepares and issues the contract. It certainly does not mean that the courts will prepare a new contract of insurance or are at liberty to change in any way the contract which was made by the parties."

And so, under the terms of the contract between Moore and the insurance company, he was required to inform them of the amount of incumbrance against the property. He undertook to do this, but this undisputed record shows it was not correctly done. That, in addition to the mortgage which he reported, there was an unrecorded mortgage of $2,000. Before he can recover he must show that he has complied with the terms of the contract. This he has failed to do. The lower court was right in holding that Moore was not entitled to recover upon this policy.

Judgment and decree of the lower court must be, and it is hereby, affirmed.

DONEGAN, C. J., and ALBERT, ANDERSON, HAMILTON, PARSONS, STIGER, and RICHARDS, JJ., concur.